TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
ALEXANDER B. SCHWAB (Cal. Bar No. 283421)
DAVID H. CHAO (Cal. Bar No. 273953)
Assistant United States Attorneys
Major Frauds Section
        1100 United States Courthouse
        312 North Spring Street
        Los Angeles, California 90012
        Telephone: (213) 894-1259/4586
        Facsimile: (213) 894-0141
        E-mail:    alexander.schwab@usdoj.gov
                   david.chao@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 21-214-MCS |
|---|---|
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT ZACHARY JOSEPH HORWITZ |
| v. | |
| ZACHARY JOSEPH HORWITZ, | |
| Defendant. | |

1.    This constitutes the plea agreement between ZACHARY JOSEPH HORWITZ ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authority.

DEFENDANT'S OBLIGATIONS

2.    Defendant agrees to:

        a.    At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to count one of the

1  indictment in <u>United States v. Zachary Joseph Horwitz</u>, CR No. 21-214-
2  MCS, which charges defendant with securities fraud, in violation of
3  15 U.S.C. §§ 78j(b), 78ff and 17 C.F.R. § 240.10b-5.

4          b.   Not contest facts agreed to in this agreement.

5          c.   Abide by all agreements regarding sentencing contained
6  in this agreement.

7          d.   Appear for all court appearances, surrender as ordered
8  for service of sentence, obey all conditions of any bond, and obey
9  any other ongoing court order in this matter.

10         e.   Not commit any crime; however, offenses that would be
11  excluded for sentencing purposes under United States Sentencing
12  Guidelines ("USSG" or "Sentencing Guidelines") § 4A1.2(c) are not
13  within the scope of this agreement.

14         f.   Be truthful at all times with the United States
15  Probation and Pretrial Services Office and the Court.

16         g.   Pay the applicable special assessment at or before the
17  time of sentencing unless defendant has demonstrated a lack of
18  ability to pay such assessments.

19         h.   Defendant agrees that any and all criminal debt
20  ordered by the Court will be due in full and immediately.  The
21  government is not precluded from pursuing, in excess of any payment
22  schedule set by the Court, any and all available remedies by which to
23  satisfy defendant's payment of the full financial obligation,
24  including referral to the Treasury Offset Program.

25         i.   Complete the Financial Disclosure Statement on a form
26  provided by the USAO and, within 30 days of defendant's entry of a
27  guilty plea, deliver the signed and dated statement, along with all
28  of the documents requested therein, to the USAO by either email at

1   usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial

2   Litigation Section at 300 North Los Angeles Street, Suite 7516, Los

3   Angeles, CA 90012.  Defendant agrees that defendant's ability to pay

4   criminal debt shall be assessed based on the completed Financial

5   Disclosure Statement and all required supporting documents, as well

6   as other relevant information relating to ability to pay.

7            j.   Authorize the USAO to obtain a credit report upon

8   returning a signed copy of this plea agreement.

9            k.   Consent to the USAO inspecting and copying all of

10  defendant's financial documents and financial information held by the

11  United States Probation and Pretrial Services Office.

12           l.   Agree that all court appearances, including his change

13  of plea hearing and sentencing hearing, may proceed by video-

14  teleconference ("VTC"), so long as such appearances are authorized by

15  Order of the Chief Judge 20-097 or another order, rule, or statute.

16  Defendant understands that, under the Constitution, the United States

17  Code, the Federal Rules of Criminal Procedure (including Rules 11,

18  32, and 43), he may have the right to be physically present at these

19  hearings.  Defendant understands that right and, after consulting

20  with counsel, voluntarily agrees to waive it and to proceed remotely.

21  Defense counsel also joins in this consent, agreement, and waiver.

22  Specifically, this agreement includes, but is not limited to, the

23  following:

24               i.   Defendant consents under Section 15002(b) of the

25  CARES Act to proceed with his change of plea hearing by VTC.

26               ii.  Defendant consents under Section 15002(b) of the

27  CARES Act to proceed with his sentencing hearing by VTC if personal

28  appearance is deemed by the Court to be unsafe due to COVID-19

1  concerns.  The parties agree to use best efforts to conduct the

2  sentencing hearing in person with the Court's approval.

3              iii. Defendant consents under 18 U.S.C. § 3148 and

4  Section 15002(b) of the CARES Act to proceed with any hearing

5  regarding alleged violations of the conditions of pretrial release by

6  VTC or telephone, if VTC is not reasonably available.

7                          THE USAO'S OBLIGATIONS

8      3.    The USAO agrees to:

9          a.    Not contest facts agreed to in this agreement.

10         b.    Abide by all agreements regarding sentencing contained

11  in this agreement.

12         c.    At the time of sentencing, move to dismiss the

13  remaining counts of the indictment as against defendant.  Defendant

14  agrees, however, that at the time of sentencing the Court may

15  consider any dismissed charges in determining the applicable

16  Sentencing Guidelines range, the propriety and extent of any

17  departure from that range, and the sentence to be imposed.

18         d.    At the time of sentencing, provided that defendant

19  demonstrates an acceptance of responsibility for the offense up to

20  and including the time of sentencing, recommend a two-level reduction

21  in the applicable Sentencing Guidelines offense level, pursuant to

22  USSG § 3E1.1, and recommend and, if necessary, move for an additional

23  one-level reduction if available under that section.

24                          NATURE OF THE OFFENSE

25     4.    Defendant understands that for defendant to be guilty of

26  the crime charged in count one, that is, securities fraud, in

27  violation of 15 U.S.C. §§ 78j(b), 78ff and 17 C.F.R. § 240.10b-5, the

28  following must be true:

4

(1) defendant willfully used a device or scheme to defraud someone, made an untrue statement of a material fact, failed to disclose a material fact that resulted in making the defendant's statements misleading, or engaged in any act, practice, or course of business that operates or would operate as a fraud or deceit upon any person;

(2) defendant's acts were undertaken, statement was made, or failure to disclose was done in connection with the purchase and sale of securities within the meaning of 15 U.S.C. § 78c(a)(10);

(3) defendant directly or indirectly used wire communications in connection with these acts, making this statement, or this failure to disclose; and

(4) defendant acted knowingly.

"Willfully" means intentionally undertaking an act, making an untrue statement, or failing to disclose for the wrongful purpose of defrauding or deceiving someone.  Acting willfully does not require that the defendant know that the conduct was unlawful.

A fact is material if there is a substantial likelihood that a reasonable investor would consider it important in making the decision to purchase securities.

It is not necessary that an untrue statement passed through or over the wire communications so long as the wire communications were used as a part of the transaction.

It is not necessary that defendant made a profit or that anyone actually suffered a loss.

<u>PENALTIES AND RESTITUTION</u>

5.  Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 15 U.S.C. §§ 78j(b),

78ff and 17 C.F.R. § 240.10b-5 is: twenty years of imprisonment; a three-year period of supervised release; a fine of $5 million or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

6. Defendant understands that defendant will be required to pay full restitution to the victims of the offense to which defendant is pleading guilty and agrees to make such restitution. Defendant understands and agrees that although a violation of 18 U.S.C. § 1343 does not constitute the count of conviction in this plea agreement, this plea agreement relates to such a charge, which is an offense against property, within the meaning of 18 U.S.C. § 3663A(c)(2), thereby bringing this offense within the ambit of 18 U.S.C. § 3663A. Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victims of the offense to which defendant is pleading guilty, and in amounts greater than those alleged in the count to which defendant is pleading guilty, so long as such persons qualify as "victims," within the meaning of 18 U.S.C. § 3663A(a)(2), of defendant's offense and/or relevant conduct. In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in USSG § 1B1.3, in connection with the offense to which defendant is pleading guilty; and (b) any counts dismissed pursuant to this agreement as well as all relevant conduct, as defined in USSG § 1B1.3, in connection with those counts. Defendant understands that the Court may impose, and the USAO reserves the right to seek, restitution on any basis permitted by law.

7.    Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

8.    Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

9.    Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future.

Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his conviction on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is automatic removal from the United States.

<u>FACTUAL BASIS</u>

10.  Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 12 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

In or about 2013, defendant founded 1inMM Capital, LLC ("1inMM Capital"), which defendant promoted as a film distribution company. 1inMM Capital's principal place of business was in Los Angeles, California.

Beginning no later than in or about March 2014, and continuing through at least on or about April 6, 2021, in Los Angeles County, within the Central District of California, and elsewhere, defendant knowingly and willfully, by the use of the means and

instrumentalities of interstate commerce, in connection with the purchase and sale of securities, used and employed manipulative and deceptive devices and contrivances, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5, by: (1) employing a scheme to defraud; (2) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (3) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon purchasers of securities (the "investors").  Defendant did so by making and causing to be made materially false and fraudulent statements and material omissions to the investors about defendant and 1inMM Capital's use of their investments.

In execution of the fraudulent scheme, defendant made offers to investors to purchase promissory notes issued by 1inMM Capital, which notes constituted "securities" within the meaning of the Securities Exchange Act of 1934, by making a series of false and misleading statements and by using various deceptive contrivances.  Each of these statements and contrivances was material to investors.  Specifically, defendant falsely represented to investors that 1inMM Capital would purchase distribution rights to certain films, which defendant falsely claimed 1inMM Capital would then profitably license to online streaming platforms such as HBO and Netflix for further distribution in regions outside the United States.  To raise funds for 1inMM Capital's purported business activities, defendant solicited investments from the investors by offering to sell them promissory notes issued by 1inMM Capital and signed by defendant.

1   The promissory notes guaranteed a specified payment on a specified

2   maturity date, typically six or twelve months in the future.  Each

3   note listed the principal amount of money borrowed, which typically

4   ranged from approximately $35,000 to $1.5 million, as well as the

5   specified amount to be paid at maturity, a calculated return that

6   ranged from 25 to 45 percent.

7        In connection with the sale of these promissory notes, defendant

8   falsely represented that 1inMM Capital would use the principal amount

9   of money invested pursuant to each note to purchase distribution

10  rights for the film(s) specified as collateral for the note.

11  Defendant also falsely represented that 1inMM Capital would satisfy

12  its obligations under each note through the profits that 1inMM

13  Capital would obtain by acquiring and licensing the distribution

14  rights to the film(s) specified in each note.  Each note contained an

15  assignment of rights provision that listed the specific film(s) that

16  would serve as collateral for the note.  The assignment of rights

17  provision in each note contained express representations and

18  warranties that 1inMM Capital was the sole and exclusive owner of the

19  rights to the listed film(s).  However, as defendant then knew, his

20  representations concerning 1inMM Capital's business activities and

21  the promissory notes themselves were false and deceptive because

22  1inMM Capital generally did not and would not acquire or possess the

23  film distribution rights for the films specified as collateral in the

24  promissory notes, and 1inMM Capital did not and would not enter into

25  any distribution agreements with the online streaming platforms for

26  these specified films.

27       In furtherance of the scheme, defendant also provided investors

28  with fraudulent copies of purported license agreements between 1inMM

1   Capital and the sales agents for the production companies of the

2   films identified in the promissory notes.  In fact, as defendant then

3   knew, these license agreements were fake because 1inMM Capital had

4   not acquired the film distribution rights that constituted the

5   purported collateral for the promissory notes and had not entered

6   into the asserted license agreements with the identified sales

7   agents.

8       In furtherance of the scheme, defendant also falsely represented

9   to investors that online streaming platforms had already entered or

10  committed to enter into distribution agreements with 1inMM Capital.

11  Defendant provided investors with copies of these purported

12  distribution agreements when, in fact, as defendant knew, 1inMM

13  Capital had not entered into the asserted distribution agreements

14  with the online streaming platforms and the purported copies of the

15  distribution agreements were fake.

16      In furtherance of the scheme and to lull the investors into

17  believing their funds were safely invested as he had promised,

18  defendant falsely reassured investors that any missed payments on

19  promissory notes were caused by the actions of the online streaming

20  platforms, and that payment on the notes would resume.  To support

21  these false claims, defendant sent the investors emails and text

22  messages regarding progress addressing the actions purportedly

23  causing the missed payments and the resumption of payments, which

24  defendant claimed had been sent to him by representatives of the

25  online streaming platforms.  In fact, as defendant then knew, he had

26  not been in communication with the online streaming platforms, and

27  the correspondence he was supposedly forwarding was fake.

28

Through the fraudulent scheme, defendant sold hundreds of promissory notes issued by 1inMM Capital and thereby fraudulently obtained at least $650 million from at least five major groups of private investors.  Defendant understood that these investor groups derived their investments, in part, from various sub-investors who did not have direct contractual agreements with 1inMM Capital, and in fact there were more than 250 such sub-investors (subject to the reservation of rights in paragraph 12 below).  Defendant did not use the invested money as promised but instead used the money to make payments to prior investors, maintain 1inMM Capital's facade of legitimate operations, make disbursements to himself and entities he controlled, and otherwise finance his own lavish lifestyle. Beginning in or about December 2019, 1inMM Capital began defaulting on all of its outstanding promissory notes.  Thus, to date, defendant, through 1inMM Capital, is in default to investors on a total outstanding principal amount of approximately $230.36 million, and defendant's scheme has caused substantial financial hardship to at least five investors.

For the purpose of executing the above-described scheme to defraud, and in furtherance of the manipulative and deceptive devices described above, defendant directly and indirectly caused the use of instrumentalities of interstate commerce in connection with the purchase and sale of securities.  For example, on or about December 14, 2018, defendant caused the interstate wire transfer of approximately $1,425,500 from Investor 1, located in Illinois, to the 1inMM Capital Account, located in California, to purchase a promissory note secured by the assignment of rights to the film "Active Measures."

1

<u>SENTENCING FACTORS</u>

2    11.  Defendant understands that in determining defendant's
3 sentence the Court is required to calculate the applicable Sentencing
4 Guidelines range and to consider that range, possible departures
5 under the Sentencing Guidelines, and the other sentencing factors set
6 forth in 18 U.S.C. § 3553(a).  Defendant understands that the
7 Sentencing Guidelines are advisory only, that defendant cannot have
8 any expectation of receiving a sentence within the calculated
9 Sentencing Guidelines range, and that after considering the
10 Sentencing Guidelines and the other § 3553(a) factors, the Court will
11 be free to exercise its discretion to impose any sentence it finds
12 appropriate up to the maximum set by statute for the crime of
13 conviction.

14    12.  Defendant and the USAO agree to the following applicable
15 Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level | 7 | USSG § 2B1.1(a)(1) |
| Loss of more than $150 million but not more than $250 million | +26 | USSG § 2B1.1(b)(1)(N) |
| Substantial Financial Hardship to 5 or more victims | +4 | USSG § 2B1.1(b)(2)(B) |
| Sophisticated Means | +2 | USSG § 2B1.1(b)(2)(10)(C) |

22 Defendant and the USAO reserve the right to argue that additional
23 specific offense characteristics, adjustments, and departures under
24 the Sentencing Guidelines are appropriate.  By way of example, but
25 not limitation, the government reserves the right to argue that
26 defendant's offense and relevant conduct resulted in substantial
27 financial hardship to 25 or more victims, and defendant reserves the

28

13

right to contest the number of sub-investors of the victim investor groups as referenced above at page 12.

13.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

14.  Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

15.  Defendant understands that by pleading guilty, defendant gives up the following rights:

a.  The right to persist in a plea of not guilty.

b.  The right to a speedy and public trial by jury.

c.  The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d.  The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.  The right to confront and cross-examine witnesses against defendant.

f.  The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.     The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.     Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

## WAIVER OF APPEAL OF CONVICTION

16.   Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

## LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

17.   Defendant agrees that, provided the Court imposes a total term of imprisonment within the statutory maximum, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order, so long as it is less than $235 million; (f) the term of probation or supervised release imposed by the Court, provided it is within the

15

statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

18.   The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment of no less than 235 months' imprisonment, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the amount of restitution ordered.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

19.   Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

1

RESULT OF VACATUR, REVERSAL, OR SET-ASIDE

2    20.  Defendant agrees that if the count of conviction is

3 vacated, reversed, or set aside, both the USAO and defendant will be

4 released from all their obligations under this agreement.

5

EFFECTIVE DATE OF AGREEMENT

6    21.  This agreement is effective upon signature and execution of

7 all required certifications by defendant, defendant's counsel, and an

8 Assistant United States Attorney.

9

BREACH OF AGREEMENT

10    22.  Defendant agrees that if defendant, at any time after the

11 effective date of the agreement, knowingly violates or fails to

12 perform any of defendant's obligations under this agreement ("a

13 breach"), the USAO may declare this agreement breached.  All of

14 defendant's obligations are material, a single breach of this

15 agreement is sufficient for the USAO to declare a breach, and

16 defendant shall not be deemed to have cured a breach without the

17 express agreement of the USAO in writing.  If the USAO declares this

18 agreement breached, and the Court finds such a breach to have

19 occurred, then: (a) if defendant has previously entered a guilty plea

20 pursuant to this agreement, defendant will not be able to withdraw

21 the guilty plea, and (b) the USAO will be relieved of all its

22 obligations under this agreement.

23    23.  Following the Court's finding of a knowing breach of this

24 agreement by defendant, should the USAO choose to pursue any charge

25 that was either dismissed or not filed as a result of this agreement,

26 then:

27

28

17

a.   Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.   Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.   Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

<u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</u>

<u>OFFICE NOT PARTIES</u>

24.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

25.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information

1    to the United States Probation and Pretrial Services Office and the

2    Court, (b) correct any and all factual misstatements relating to the

3    Court's Sentencing Guidelines calculations and determination of

4    sentence, and (c) argue on appeal and collateral review that the

5    Court's Sentencing Guidelines calculations and the sentence it

6    chooses to impose are not error, although each party agrees to

7    maintain its view that the calculations in paragraph 12 are

8    consistent with the facts of this case.  While this paragraph permits

9    both the USAO and defendant to submit full and complete factual

10   information to the United States Probation and Pretrial Services

11   Office and the Court, even if that factual information may be viewed

12   as inconsistent with the facts agreed to in this agreement, this

13   paragraph does not affect defendant's and the USAO's obligations not

14   to contest the facts agreed to in this agreement.

15       26.  Defendant understands that even if the Court ignores any

16   sentencing recommendation, finds facts or reaches conclusions

17   different from those agreed to, and/or imposes any sentence up to the

18   maximum established by statute, defendant cannot, for that reason,

19   withdraw defendant's guilty plea, and defendant will remain bound to

20   fulfill all defendant's obligations under this agreement.  Defendant

21   understands that no one -- not the prosecutor, defendant's attorney,

22   or the Court -- can make a binding prediction or promise regarding

23   the sentence defendant will receive, except that it will be within

24   the statutory maximum.

25                          NO ADDITIONAL AGREEMENTS

26       27.  Defendant understands that, except as set forth herein,

27   there are no promises, understandings, or agreements between the USAO

28   and defendant or defendant's attorney, and that no additional

19

1   promise, understanding, or agreement may be entered into unless in a

2   writing signed by all parties or on the record in court.

3              PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

4       28.   The parties agree that this agreement will be considered

5   part of the record of defendant's guilty plea hearing as if the

6   entire agreement had been read into the record of the proceeding.

7   AGREED AND ACCEPTED

8   UNITED STATES ATTORNEY'S OFFICE
    FOR THE CENTRAL DISTRICT OF
9   CALIFORNIA

10  TRACY L. WILKISON
    Acting United States Attorney

11

12  _____      9/1/2021
                                           _____
13  ALEXANDER B. SCHWAB                     Date
    DAVID H. CHAO
14  Assistant United States Attorneys

15  _____      09/01/2021
                                           _____
16  ZACHARY JOSEPH HORWITZ                  Date
    Defendant

17

18  _____      9.1.2021
                                           _____
    ANTHONY PACHECO                         Date
19  RYAN S. HEDGES
    Attorneys for Defendant
20  ZACHARY JOSEPH HORWITZ

21

22

23

24

25

26

27

28

                              20

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____          09/01/2021
ZACHARY JOSEPH HORWITZ                    Date
Defendant

21

<u>CERTIFICATION OF DEFENDANT'S ATTORNEY</u>

I am one of ZACHARY JOSEPH HORWITZ's attorneys.  I have carefully and thoroughly discussed every part of this agreement with my client.  Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is informed and voluntary; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

_____          9·1·2021
ANTHONY PACHECO                            Date
RYAN S. HEDGES
Attorneys for Defendant
ZACHARY JOSEPH HORWITZ

22